AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>4/25/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: \_\_\_MMC\_\_\_ DEPUTY | | FILED<br>CLERK, U.S. DISTRICT COURT<br>4/25/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: \_\_\_jm\_\_\_ DEPUTY |

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

Gerardo Valadez,

Defendant

Case No.   2:25-MJ-02476-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 1, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Interference with Commerce by Threats or Violence |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ *Betros Peter Mikaelyan*
Complainant's signature

Betros Peter Mikaelyan, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone. Date: April 25, 2025 at 2:22 p.m.

Judge's signature

City and state:   Los Angeles, California

Hon. Michael B. Kaufman, U.S. Magistrate Judge
Printed name and title

AUSA: Max A. Shapiro (x7419)

**AFFIDAVIT**

I, Betros Peter Mikaelyan, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since January 2023. I am currently assigned to the Glendale Field Office of the Los Angeles Field Division of ATF, which conducts investigations regarding violations of federal firearms, arson, explosives, and drug laws. My experience as an ATF SA includes, but is not limited to, conducting physical and electronic surveillance, controlled drug/firearm purchases using informants/undercovers, the analysis of telephone tower dump data, and executing arrest and search warrant enforcement operations.

2. Through my training and experience, I have become familiar with the illicit way firearms are acquired and controlled substances are imported, manufactured, distributed, and sold. I have become familiar with the efforts of individuals engaged in the importation, smuggling, manufacturing, distribution, and sale of firearms and controlled substances to avoid detection and apprehension by law enforcement officers including the use of cellular phones, counter-surveillance techniques, false or fictitious identities and addresses, money-laundering methods, and coded language. I have also participated in many aspects of armed robbery investigations.

3. Prior to being employed with the ATF, I was employed by the Department of Defense as a federal police officer for approximately two years. My experience as a federal police officer included, but was not limited to, responding to, detecting, and investigating all crimes, arresting violators, and assisting the public on all calls for service/emergencies. Other duties included performing a full range of force protection, conducting traffic stops for motor vehicle violations under the Assimilative Crimes Act, and working in partnership with the Naval Criminal Investigations Service ("NCIS") Special Agents to locate and arrest organized crime members who worked on the federal installation.

4. As part of my training, I attended the Criminal Investigator Training Program and Special Agent Basic Training for ATF at the Federal Law Enforcement Training Center in Glynco, Georgia for approximately 27 weeks. This training included but was not limited to instruction on federal and state firearms, drug laws, and regulations. I also received training in the fields of arson, explosives, and other violent crimes.

## II. PURPOSE OF AFFIDAVIT

5. This affidavit is made in support of a criminal complaint and arrest warrant against Gerardo VALADEZ ("VALADEZ") for a violation of 18 U.S.C. § 1951: Interference with Commerce by Threats or Violence.

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and search warrants and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports and video surveillance footage, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. On March 1, 2025, Two Suspects Robbed a Target Retail Store by Brandishing a Firearm at Two Employees.**

8. On March 1, 2025, Los Angeles County Sheriff's Department ("LASD") deputies responded to a robbery call for service at a "Target" retail store located at 39440 10th St. West, in the City of Palmdale, California.

9. Upon arrival, the LASD deputies learned that an armed robbery had occurred at the Target store. The deputies contacted two of the store's loss prevention employees who were the victims of the armed robbery (hereinafter, "V1" and "V2").

10. According to my review of law enforcement reports, V1 and V2 told the deputies the following in summary:

    a. That day, at approximately 7:24 p.m., V1 utilized the Closed-Circuit Television (CCTV) video surveillance footage and observed a Hispanic female ("SUSPECT 2") wearing a black

sweater, black pants, and carrying a brown backpack enter the store.  SUSPECT 2 selected multiple products from the hygiene department, and then walk toward the home décor department where she concealed the products gathered from the hygiene department inside the same brown backpack that she was carrying when she entered the store.  SUSPECT 2 then walked to the food department where she met with a Hispanic male ("SUSPECT 1") wearing a gray sweater, white shirt, blue jeans, and a gray beanie.  Shortly later, SUSPECT 1 and SUSPECT 2 walked towards the front of the store entrance and bypassed all points of sale with the concealed stolen items inside SUSPECT 2's backpack.

|  |  |
|---|---|
| Security footage of SUSPECT 1 and SUSPECT 2 entering store. | Security footage of SUSPECT 2 carrying hygiene products. |

　　　　b.　　V1 informed V2 that SUSPECT 2 was shoplifting.  V2 checked the home decor department to verify the items SUSPECT

4

2 concealed in her backpack were not dropped or left behind. When V2 verified that SUSPECT 2 was walking out with the stolen merchandise, V2 walked towards the vestibule portion of the store where V1, SUSPECT 1 and SUSPECT 2 were located.

        c.   V1 contacted SUSPECT 2 and told her that she needed to go with him to the loss prevention office regarding the stolen items. SUSPECT 2 agreed, however, SUSPECT 1 became upset with V1 and punched V1 once on the left side of V1's face.

        d.   SUSPECT 1 then brandished what V2 believed to be a black semi-automatic firearm that was in his waistband and stated, "you want to die today?" V2 believed that SUSPECT 1 would be able to carry out the threat of killing him based on SUSPECT 1's demeanor when he brandished the firearm.[1]

---

[1] The surveillance footage does not depict SUSPECT 1 brandishing a firearm due to the captured camera angle. However, V1 and V2 can be seen suddenly backing away from where SUSPECT 1 was during the time they claimed SUSPECT 1 brandished the firearm.

|  |  |
|---|---|
| Security footage of V1 contacting SUSPECT 2. | Security footage of SUSPECT 1 punching V1's face. |

  e. SUSPECT 1 and SUSPECT 2 then exited the store through the front entrance with the stolen merchandise and walked towards the parking lot and out of view.

  f. SUSPECT 1 and SUSPECT 2 entered a dark colored SUV and drove Southbound through the parking lot.

  **B.** **LASD Deputies Identified SUSPECT 1 as VALADEZ Based on Recent Contacts.**

 11. Based on my review of law enforcement reports and my involvement in the investigation, I understand that on March 3, 2025, LASD Robbery Deputies reviewed the video surveillance footage from Target and recognized SUSPECT 1 as Gerardo VALADEZ ("VALADEZ") from numerous recent contacts with him. Specifically, LASD Robbery Deputies had arrested VALADEZ on

three separate incidents within the last two months, including twice for possession of a firearm.

12. Based on law enforcement's recent encounters with VALADEZ including a recent arrest outside a residence, LASD Robbery Deputies believed to know the location of VALADEZ's residence. As a result, on the same day, they conducted surveillance at the address, located at 834 East Avenue P-15 Palmdale, CA. The deputies observed VALADEZ exit from the residence and stand in the front yard for approximately five minutes before returning inside.

13. Following the information gathered from surveillance, LASD Robbery Deputies received a state arrest warrant for VALADEZ and a search warrant for the residence.

### C. LASD Deputies Arrest VALADEZ and Recover Firearm, Ammunition, and Clothing Tying Him to the Target Robbery.

14. Based on my review of law enforcement reports conversations with other law enforcement agents, and my own involvement in the investigation, I know that on March 6, 2025, LASD deputies detained and later arrested VALADEZ during a routine traffic stop in Palmdale, CA. During the search incident to arrest of VALADEZ's person, LASD deputies recovered two plastic baggies containing suspected narcotics. One of the bags had contained suspected fentanyl and the other contained suspected methamphetamine.

15. LASD deputies then transported VALADEZ to the jail for booking. During processing at the jail, LASD deputies observed

VALADEZ was wearing shoes, a beanie, and a sweater that matched those worn during the robbery.

|  |  |  |
|---|---|---|
| Security footage of VALADEZ's outfit during the robbery. | Body Camera Footage of VALADEZ following arrest. | Photo of the shoes VALADEZ wore at the time of arrest. |

  16. Shortly after arresting VALADEZ, LASD deputies executed the search warrant at his residence.  During the search of the only bedroom at the residence, LASD deputies recovered a black cross body bag which appeared to be the one VALADEZ wore during the robbery.  While searching inside the bag, LASD deputies recovered seven rounds of 9mm ammunition.



| Security footage of VALADEZ wearing a black cross body bag during the robbery. | Photo capture of the same black cross body bag recovered in VALADEZ's bedroom. |

17.   Inside the top left drawer of the dresser of the bedroom, LASD deputies recovered a black semi-automatic firearm loaded with fifteen rounds of 9mm ammunition, which was consistent with the type of firearm described by V2.  LASD deputies observed that the firearm did not have any serial number, which was later identified to be a privately made firearm, commonly referred to as "ghost gun."



Photo capture of the firearm recovered from the top left drawer of dresser in the bedroom.

18.  LASD deputies also searched a black camera bag on the floor inside the bedroom and recovered a single 9mm round of ammunition from the main compartment and a box of .40 caliber ammunition from the left side pocket of the bag.  The box contained fifty rounds of .40 caliber ammunition.

|  |  |
|---|---|
| Photo capture of a black camera bag located on the floor inside the bedroom. | Photo capture of a box of .40 caliber ammunition recovered from the left side pocket of the camera bag. |

19. LASD Deputies then located a "Michael Kors" backpack in the bedroom, which resembled the one worn by SUSPECT 2 during the robbery.

|  |  |
|---|---|
| Security footage of SUSPECT 2 wearing a female "Michael Kors" backpack during the day of the store robbery. | Photo capture of the same female "Michael Kors" backpack recovered from the bedroom. |

**D.   The Target Store Operates in and Affects Interstate Commerce.**

20.   Based on my review of law enforcement reports, my training and experience, and my own involvement in the investigation, I know that Target is a major nationwide American retail corporations with stores located outside of the state of California.  Target also accepts credit cards transactions that affect interstate and/or foreign commerce.

**E. Law Enforcement Records Confirm VALADEZ Is a Convicted Felon and an Alien.**

21. Based on my review of National Law Enforcement Telecommunications System ("NLETS") and other law enforcement databases, I learned the following:

    a. On July 28, 2008, VALADEZ was convicted of a felony for the possession of a controlled substance in violation of California Health and Safety Code Section 11377(A), in the Superior Court of the State of California, County of Los Angeles, Case Number: ATPMA04251001.

    b. VALADEZ's Immigration and Customs Enforcement (I.C.E) records reveal that VALADEZ had an assigned Alien Number: A95775908, with a birthplace of Mexico.

    c. VALADEZ was removed from the United States on June 1, 2009. No record of legal re-entry was recorded.

## IV. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that VALADEZ committed a violation of 18 U.S.C. § 1951 (Interference with Commerce by Threats or Violence).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 25th day of April, 2025.

_____
HON. MICHAEL KAUFMAN
UNITED STATES MAGISTRATE JUDGE